# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                              **Case No. 8:15-CR-422-SCB-JSS**

**ALVARO VELAZQUEZ-ESTUPINAN**
_____/

## SENTENCING MEMORANDUM IN SUPPORT OF OBJECTIONS TO GUIDELINES CALCULATION CONTAINED IN PRESENTENCE INVESTIGATION REPORT

The Defendant, Alvaro Velazquez-Estupinan, by and through undersigned counsel hereby files this sentencing memorandum in support of his previously-lodged pilot\captain, and minor role objections pursuant to U.S.S.G. §2D1.1(b)(3) and U.S.S.G. §3B1.2(b)

As grounds in support thereof, Mr. Velazquez-Estupinan shows as follows:

### Sentencing Guideline Calculation

Because Mr. Velazquez-Estupinan was involved in a cocaine trafficking conspiracy which involved more than 450 KG, his base offense level, pursuant to U.S.S.G. §2D1.1, is calculated in the Presentence Report to be a level 38. PSR ¶16. Pursuant to U.S.S.G. §2D1.1(b)(3), Mr. Velazquez-

Estupinan's base offense level is enhanced 2 levels even though the United States Coast Guard's reports identified Mr. Velazquez-Estupinan's "Position" as "CREW" and indicate that there was no master on board the vessel. See "Law Enforcement Case Package." As a result of his qualification for the "safety value" provision, Mr. Velazquez-Estupinan's base offense level is reduced by 2 levels, resulting in an adjusted offense level of 38. PSR ¶¶17, 22. With a 3-level reduction for "acceptance of responsibility," it is suggested that the total offense level is 35. PSR ¶26.

Mr. Velazquez-Estupinan has no prior arrests, convictions, or contacts with law enforcement and, as such, is a criminal history category I offender. PSR¶¶27-33. With a total offense level of 35 and a criminal history category I is suggested that Mr. Velazquez-Estupinan's advisory guideline imprisonment range is 168 - 210 months (14 years - 17 years, 6 months). PSR ¶62.

In the Presentence Investigation Report, Mr. Velazquez-Estupinan is not given any reduction for his role in the offense. PSR ¶20. He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and pursuant to U.S.S.G. §2D1.1(a)(5) a 4-level reduction in his base offense level. *See* PSR Addendum.

## Captain and\or Pilot Guideline Objection

On November 11, 1988, President Reagan signed into law the Anti-Drug Abuse Act of 1988. The Act contained a directive to the United States Sentencing Commission to amend the existing sentencing guidelines by adding the predecessor to the current §2D1.1(b)(3). Guideline Amendment 134 added the following Specific Offense Characteristic to the then existing §2D1.1: "If the defendant is convicted of violating 21 U.S.C. § 960(a) under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import the controlled substance, or (B) the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance, increase by 2 levels. If the resulting offense level is less than level 26, increase to level 26." The current version contained in U.S.S.G 2D1.1(b)(3) is very similar and does not require a different interpretation of the cases listed below in support of Mr. Velazquez-Estupinan's objections.

The U.S.S.G 2D1.1(b)(3) enhancement should not be applied in this case for the following reasons: (1) There is insufficient evidence to determine that Mr. Velazquez-Estupinan was the pilot or captain; (2) There is no evidence that the controlled substance was being imported into or exported from the United States; and (3) The Congress and Sentencing

Commission could not have intended for the enhancement to be applied under the circumstances existing in the present case.

## Lack of Evidence to Support Application

United States Probation applied a two level U.S.S.G 2D1.1(b)(3) enhancement to Mr. Velazquez-Estupinan's offense level asserting that he acted as the captain and pilot of the vessel. PSR ¶18. In response to Mr. Velazquez-Estupinan's objection, Probation responded that "on October 13, 2015, Ramiro Arturo Garcia-Trujillo told law enforcement agents that the defendant was the first to pilot the go-fast vessel and that he did so for approximately 20 hours. During an interview on November 10, 2015, Herlin Eduardo Valencia-Martinez told law enforcement agents that the defendant piloted the go fast vessel." *See* PSR Addendum. Mr. Velazquez-Estupinan objects to Probation's response generally as unreliable hearsay (we also object to the use of the term "go-fast" because it is inaccurate and misleading). More specifically, Mr. Garcia-Trujillo's statement that Mr. Velazquez-Estupinan was first to pilot the vessel and that he did so for approximately 20 hours is meaningless if one considers that the vessel was in the ocean for approximately 77 hours before the defendants were arrested, and if true mandates that there was more than one pilot on the vessel. Mr. Valencia-Martinez' purported statement is self-serving and inherently

4

unreliable.  Neither of the co-defendants apparently indicated that Mr.

Velazquez had or asserted any authority over them or the cargo.  As

indicated above, reports prepared by the United States Coast Guard do not

identify Mr. Velazquez-Estupinan as the captain or pilot of the vessel.

## U.S.S.G. 2D1.1(b)(3)'s Importation\Exportation Requirement

The plain language of U.S.S.G 2D1.1(b)(3) requires a preliminary

finding that the defendant imported or exported a controlled substance.  No

such finding can be made here and therefore the Court's analysis should end

at that point.

In *United States of America v. Joelson*, 7 F.3d 174 (9th Cir. 1993), the

Ninth Circuit Court of Appeals performed a complete analysis of the

importation requirement.  In 1990, Mr. Maxwell Joelson made arrangements

with a with a Drug Enforcement Administration ("DEA") confidential

informant to import approximately 800 to 1000 kilograms of cocaine from

Guatemala and received delivery of the cocaine in a restaurant parking lot (in

the United States).  In February 1991, Joelson was convicted after a jury trial.

The cocaine had been delivered to a landing strip in Guatemala in an Arrow

Commander 1000, which was not a "regularly scheduled commercial air

carrier." The cocaine was unloaded, and DEA agents took the cocaine, stored

it, and ultimately flew it into the United States on a commercial Pan Am flight.

The district court held that the specific offense characteristic applied and increased Mr. Joelson's offense level by two levels. The Court of Appeals held that the plain language of section 2D1.1(b)(2) should be given effect. The cocaine was imported from the landing strip in Guatemala to the United States. Although a private plane flew the cocaine to Guatemala, a commercial Pan Am air carrier "was used to import" the cocaine into the United States. *United States of America v. Joelson*, 7 F.3d 174 (1993). In Mr. Velazquez-Estupinan's case, he and two others were hired to transport a shipment of cocaine from Tumaco, Colombia to a point in the Pacific Ocean well off the shore of Guatemala. From there, it presumably would be imported into Guatemala. There is no evidence of the cocaine's final destination. Certainly, Mr. Velazquez-Estupinan had no intention of importing the cocaine into the United States.

The *Joelson* Court specifically held: "Stretching the definition of 'used to import' to incorporate any use of a private airplane, regardless of whether it was used during the actual importation of the cocaine, flies in the face of the 'plain language' of section 2D1.1(b)(2)." *United States of America v. Joelson*, 7 F.3d 174, at 180 (1993).

This Court should use similar reasoning to conclude that the imposition of the two level enhancement is inappropriate under the circumstances in Mr.

6

Velazquez-Estupinan's case.

### Technological Advances in Navigation Require a More Thorough Analysis Prior to Application of U.S.S.G. 2D1.1(b)(3)

While application of U.S.S.G. 2D1.1(b)(3) may be correctly applied to pilots and captains of many types of vessels, it is not appropriate in a case where the vessel is a small, slow moving open boat and the pilot is not required to possess or use any special skills to reach the required destination. Although, United States Sentencing Guideline §2D1.1(b)(3), is largely unchanged from the its introduction in 1989, navigation technology has. In 1989, the ability to navigate a vessel in the ocean was a special skill possessed by few. It required knowledge of astronomy, geometry, marine currents, weather, nautical charts and expertise with the compass. In 1989, the Global Positioning System ("GPS") was not available to civilians. Today, ocean navigation as done in this case is as simple as entering a point into the GPS and steering towards the point on the GPS screen. Navigating a vessel in the open ocean is simpler than is navigating a car to a desired location, there are no turns or obstacles to confuse the navigator.

In 1988, Alberto Calderon was prosecuted for importing cocaine from the Bahamas to the Florida Keys in a vessel. The district court imposed a two-level enhancement pursuant to U.S.S.G. § 3B1.3, on the captain of the

vessel because he possessed and *used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.  United States v. Calderon*, 127 F.3d 1314, 1339 (11th Cir. 1997).  The 11th Circuit affirmed, stating "Likewise, we do not believe that an average person off the street would possess the requisite skills to captain a cocaine laden boat on the high seas from the Bahamas to a predetermined specific location in Southern Florida *using a chart and compass* at night without lights …"  *United States v. Calderon*, 127 F.3d 1314, 1339-1340 (1997)(e*mphasis added).*  In contrast, no charts were used on the vessel in the instant case, they simply steered to a point on the GPS.  Additionally, the vessel itself required no special skills to operate, it was a small open boat with two relatively small (75 horsepower) engines.  The boat traveled at a slow rate of speed, only 15 to 20 miles per hour.   Furthermore, Mr. Velazquez-Estupinan is not a licensed or trained boat captain or pilot (relevant but not required for application of the enhancement).  Both Ecuador and the United States require specialized training and licensure to operate as a vessel captain or pilot.

## Minor Role Guideline Objection

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction.  Specifically, §3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in

any criminal activity." The determination whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *See* U.S.S.G. §3B1.2 App. N. 3(C). The Application notes provide guidance on distinguishing between a "minimal" and a "minor" participant. Specifically the application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that this downward adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. N. 4.

 In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." Additionally, in contrast to the Commission's observation that a "minimal participant" reduction should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant. In fact, the Sentencing Commission has recently expressed its opinion that sentencing courts are not granting mitigating role reductions for low-level

offenders as much as the Commission had intended. *See* United States Sentencing Commission Amendments to the Sentencing Guidelines, Mitigating Role Amendment (April 30, 2015).

In the present case, Mr. Velazquez-Estupinan does not qualify for a minimal role reduction, but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty. He is less culpable than the sellers of the cocaine, the manufacturers of the cocaine, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, the Colombian load guard who was in charge of the transportation operation and the drug dealers who will ultimately distribute the cocaine. He is equally culpable with his one charged coconspirator and crewmember of the vessel.

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels." Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the Court shall additionally reduce that base offense

level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

The Sentencing Commission, out of concern that sentencing courts around the country have been under applying or misapplying the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense level reductions. Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640. As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30. The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .

[ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of level 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*

This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C., Amend 640 (*emphasis added*).

After conducting a recent, in-depth national study and taking public comment, the Sentencing Commission has found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission, despite this 2002 amendment. Specifically, the Sentencing Commission noted:

The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is

applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* United States Sentencing Commission Amendments to the Sentencing Guidelines, Mitigating Role Amendment (April 30, 2015), Reasons for Amendment, p. 45.

Based on this study's findings, the Commission's clarifying amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who preform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts' often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id*. Of significant note, the Eleventh Circuit opinion in *United States v. Rodriguez DeVaron*, 175 F.3d 930 (11th Cir. 1999), which has been used exclusively in this District to deny minor role reductions for transporters of large quantities of cocaine while on a vessel subject to the jurisdiction of the

United States, relied heavily on the principle that a defendant who plays an essential or integral role in the offense conduct for which he or she are convicted are not eligible for a mitigating role reduction. *See* 174 F.3d at 943 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs" justifying a denial of a mitigating role reduction). It is this judicial reasoning that the sentencing commissions amendment is specifically designed to correct. *Id.* ("Next, the amendment addresses cases in which the defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely because he or she was 'integral' or 'indispensable' to the commission of the offense. [Citations Omitted] [T]he Amendment revises the commentary to emphasize that 'the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative' and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible). This clarifying amendment to the Mitigating Role provisions took effect November 1, 2015.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines is designed

specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id.* Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* Although not referenced in the Amendment, a reading of the *Rodriguez DeVaron* case would appear to be one of the cases the Commission has found that has been discouraging courts from applying the mitigating role adjustment in otherwise appropriate cases. The Amendment specifically references *United States v. Skinner*, 690 F.3d 772, 783-84 (6th Cir. 2012); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008), *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); and *United States v. Carter*, 971 F.2d 597, 600 (10th Cir. 1992) all of which rely upon the same flawed reasoning relied upon in *Rodriguez DeVaron* that if a defendant plays an critical, integral, or indispensable role in the criminal activity they are ineligible for a mitigating role reduction.

To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a nonexhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id.*

Specifically, the Commission's clarifying factors direct a sentencing court to consider:

> (i)    The degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)   The degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)  The degree to which the defendant exercised decisionmaking authority or influenced the exercise of decisionmaking authority;
>
> (iv)   The nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)    The degree to which the defendant stood to benefit from the criminal activity.

*Id.* at p. 48.

Additionally and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

Of further significance to the present case, the Commission did not list as a factor in determining the applicability of a mitigating role reduction the amount of drugs involved in the criminal activity. In contrast, in *Rodriguez DeVaron,* the Eleventh Circuit relied heavily on the amount of drugs found in a courier's possession to be of great importance. As noted by the Court in *Rodriguez- DeVaron*, "because the amount of drugs in a courier's possession - whether very large or very small, may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943. In 1999, the Eleventh Circuit found support for the quantity of drugs factor by pointing to an Application Note within the guidelines. *Id*. Specifically, the *Rodriguez DeVaron* court noted, "indeed, the Guidelines explicitly recognize that the amount of the drugs may be determinative in the context of the minimal participants.' *Id*. However, subsequent to the issuance of the *Rodriguez DeVaron* opinion, the application note with its illustrative example which was relied upon by the Eleventh Circuit was deleted from the guidelines on November 1, 2001. *See* Nov. 1, 2001 version of the Guidelines, §2B1.2, App. notes generally. The removal of

the illustrative example regarding the weight of the drugs clearly evidences the Commission's intent that the amount of the drugs involved should not be a determinative factor. In fact, in the soon-to-be-enacted amendment to the Guidelines, while listing several relevant factors for a sentencing court's consideration, the Commission elected not to include the amount of the drugs and certainly did not express the opinion that the amount of drugs involved could be determinative. *Id.*

In contrast to the now-apparently-outdated *Rodriguez DeVaron* opinion, the Commissions' clarifying amendment makes it abundantly clear that Mr. Velazquez-Estupinan should receive a 2-level minor role reduction and, by consequence, a reduction in his base offense level pursuant to §2D1.1(a)(5). Factually, Mr. Velazquez-Estupinan and his indicted co-defendant were hired by a Colombian drug trafficking organization to act as couriers for the single task of transporting cocaine from Colombia to Central America while on-board a small open boat powered by two 75 horsepower outboard motors. Both were to receive financial compensation for transporting the drugs and neither of them had any ownership or proprietary interest in the drugs. To put it simply, they were being paid to perform the limited tasks of transportation of the drugs from one country to another by way of the open sea. Mr. Velazquez-Estupinan's role in the drug trafficking

organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation, or even the end distributor of the cocaine; he was simply being paid along with one other crewmember to perform the task of piloting and transporting a vessel containing cocaine from the sellers to the buyers of the cocaine. He is, in fact, the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e.*, drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1 as well as in the proposed amendment to U.S.S.G. §3B1.2. It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organizations are the specific type of offenders the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that Mr. Velazquez-Estupinan received a two-level enhancement for piloting or navigating the vessel does not exclude him from a mitigating role reduction; if that was the intent of the Commission, it would have specifically noted such prohibition within the guidelines. In fact, if one is hired for the specific and only purpose of transportation of drugs, one must assume those drugs would be transported either by foot, car, boat, or air; the latter two forms of transportation mandate a two-level special skill

enhancement. Certainly ones' use of a special skill does not in any way effect their role or relative culpability level within a larger drug trafficking organization. Such a special skill may make a defendant essential to the transportation, but as the Commission has made clear being "essential" is not a ground to deny a mitigating role reduction.

Additionally, the fact that the large drug trafficking organization is involved in distribution of cocaine amounts larger than the amount of cocaine Mr. Velazquez-Estupinan and his co-defendant were apprehended with does not in any way preclude either of them from being eligible for a mitigating role reduction. As noted in the Commission's clarifying amendment at Application Note 3 to U.S.S.G. §3B1.2:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines."

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, it is clear that each and every factor would

support Mr. Velazquez-Estupinan receiving a mitigating role reduction. As a simple courier or transporter of drugs, Mr. Velazquez-Estupinan:

(i) Had little to no degree of understanding of the scope and structure of the criminal activity and was simply instructed to transport the cocaine from point A to point B;

(ii) He had no role in planning or organizing the criminal activity, including no role in even organizing or planning the transportation operation;

(iii) He had no decision-making authority nor did he have any influence regarding the exercise of decision-making authority. He was simply given coordinate destinations and he simply followed the directions of others on where he was to transport the drugs;

(iv) The nature and extent of his activity and participation was limited to transporting packages of cocaine from Columbia to Central America and he had little to no responsibility or discretion in preforming these limited transportation functions;

(v) The only benefit Mr. Velazquez-Estupinan was to receive for his transportation function of a single load of cocaine was a flat fee which was especially minimal in light of the street value of the drugs he was transporting; and

(vi) He had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, transportation of drugs).

Again and in contrast to the *Rodriguez DeVaron* opinion which has been relied upon by United States Probation and the Government in their effort to deny persons such as Mr. Velazquez-Estupinan a mitigation role reduction, as

noted by the Sentencing Commission, the fact that Mr. Velazquez-Estupinan may have been "integral" or "indispensable" to the larger drug trafficking organization by facilitating the transportation of the drugs from Colombia to Central America does not preclude him from receiving a minor role reduction. While this fact alone would be grounds to preclude Mr. Velazquez-Estupinan under *Rodriguez-DeVaron*, the purpose of the Commission's mitigating role amendment is specifically designed to cause sentencing courts to grant role reductions despite case law such as *Rodriguez DeVaron* which has been discouraging courts, including courts within this district, from granting such departures for otherwise qualified individuals. As such, Mr. Velazquez-Estupinan should receive a 2-level minor role reduction and a corresponding 4-level U.S.S.G. 2D1.1(a)(5) adjustment in his base offense level.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record this 15th day of May, 2016.

*/s/ Mark Ciaravella*
Mark Ciaravella
Florida Bar Number 46108
1110 North Florida Avenue
Tampa, Florida 33502
Telephone 813-221-1640
Email: mwc@Ciaravella.com
*Counsel for Velazquez-Estupinan*